TUCKER, Judge.
By the case agreed, it appears, that M. Whiting, deceased, in the year 1778, and for some years after, was a citizen of Virginia, and the appellee Isbell, his slave, born in this stale; and that she was a slave in this state on the fifth day of October, 1778, when the act for preventing the further emancipation of slaves passed, and so continued till the year 1781 or 1782; when Whiting removed his family and part of his property to Maryland; among which property was the appellee. That she was hired out, in Maryland, for about two years and a half. That during that time, Whiting left a part of his property in the county of Berkeley in Virginia, and after residing three or four years in Maryland, removed back to Virginia. That during his residence in Maryland, to wit, in March 1784, he sold the appellee, then being in Maryland, to the appellant, as a slave, who brought her, from thence, into this state, at that time; he being, at that time, a resident in Berkeley county, Virginia, where he has resided ever since.
Judgment, upon this case agreed, having been given for the appellant in the county court, the same was reversed in the district court: and from the judgment of reversal, the appellant Wilson has appealed to this court.
Before I proceed to the merits of this cause, I shall take notice of the point made by Mr. Hay, that by the plea of not guilty, the appellant, then defendant in the suit, has admitted, that the then plaintiff was a free person, and had a right to maintain an action against him for the assault and battery alleged in the declaration.
*The law in the case of villeins was certainly as Mr. Hay said, Eitt. | 192, 193; 1 Inst. 124, b. And I will not say, that there may not be cases, in which I should deem the principle equally applicable to slaves in Virginia, as to villeins in England. But it was satisfactorily answered by Mr. Wickham, that the action of trespass, assault and battery, and false imprisonment, was as much a fictitious form of an action, invented, under the control of our courts, for the trial of the plaintiff’s right to freedom, as ejectment is for the trial of the title to lands; the intent of which is, to force the parties to go to trial upon the merits, without being entangled in the nicety of pleadings on either side. The preliminary steps, first required by the courts, and now by a positive act of the legislature, admit no doubt in this case. 1 Virg. E. 1795.
The act of October 1778, ch. 1, deciarás that, from and after the passing thereof, no slave shall be imported into this commonwealth by sea, or land ; and that every slave imported contrary to the true intent and meaning of the act, shall, upon such importation, become free.
The cases excepted out of this general and comprehensive clause, are those of slaves belonging to emigrants from any of the United States; and of travellers making a transient stay in the commonwealth, and carrying them out again. Neither of which are supposed to have any relation to this case. Then follows another proviso, that the act shall not be construed to extend to persons claiming slaves by descent, devise, or marriage; or to any citizen of the commonwealth, being then the actual owners and proprietors of slaves residing in, or being in any of the United States, and'retnov-ing such slaves into this commonwealth.
The case agreed shews that the appellant Wilson was not then the actual owner of the slave Isbell; that he did not acquire her by descent, devise or marriage, but by a voluntary purchase in a different state, from which she was brought by him, many years after the commencement of the act, into this state. It does not come within any of the exceptions ^'contained in the act; nor in my opinion, within the reason of any of them. The question has nothing to do with the rights of Mr. Whiting, her former master, nor with the birth-place of the slave, but relates wholly to the place where she was when Wilson purchased her, and to his conduct in making such purchase in another state, and bringing the slave out of that state into this. I am therefore of opinion, that the judgment should be affirmed.
ROANE, Judge.
The case is very different from what it might have been if Whiting, the former owner of the appellee, had never sold her, but had brought her back with him on his return to Virginia : But, even in that case, the act of 1778 would be against him, if the act of 1796 is a true exposition thereof. The act of 1796 makes an exception in favour of such persons bringing back slaves into the state only, as may not have sold, or hired them out in another state.
The words of the act of 1778 are sufficiently comprehensive to include this case; and this is made more manifest by the two provisos therein contained. By the first, slaves may be imported, .on taking the oath therein contained, by persons removing from any other of the United States, and becoming citizens of this state. The legislature relaxes from her policy in this instance, in consideration of the benefit received by the accession of new citizens. This ingredient is wanting in this case; for the appellant was actually a resident of Virginia, at the time of the purchase: By the second, an exception is also made in favour of citizens being, then, the actual owners and proprietors of slaves residing, or being, in any of the United States, and *1006 removing such slaves into this commonwealth.
If the appellant had been then, i. e., in October 1778, the owner of the slave in question, his right to her would have been saved by the act; but it is otherwise, by the omission of the proviso to embrace his case. I think if these words, “residing” or “being,” in this proviso, had *been sufficiently attended to, much argument might have been saved. All the enquiry, as to the character of the slave anterior to her residence in Maryland, is wholly irrelevant. As slaves do not become citizens in any state, all the enquiry to be made in such case, not only under this law, but on the general principle, is, whether the slave was residing or being in another state at the time of the purchase and importation.
As to the consequences resulting from this decision, these in a doubtful case might be attended to by us, but in a plain case, they were only proper for the consideration of the legislature; who, accordingly, have taken up the subject and made such provisions touching the same as to them seemed right. I am of opinion that ihe judgment ought to be affirmed.
FLEMING, Judge.
The case is clearly within the mischief which was intended to be remedied by the act of 1778: and it makes no difference that the slave in question was born in this state, and brought back by a citizen of this commonwealth; and that her former master afterwards returned and resided in Virginia. For he had carried her to Maryland, where he dwelt for several years; and then sold her to the appellant; who imported her into this state, in manifest violation of the express declaration of the statute: and therefore, must abide the consequences. I concur that the judgment ought to be affirmed.
CARRINGTON, Judge, concurred.
LYONS, President.
It is the unanimous opinion of the court, that the judgment of the district court should be affirmed.
N. B. Judge Tucker’s note book contains the following memorandum upon this case: 1‘There appearing to be no difference of opinion between the judges in conference, *Judge Lyons delivered the unanimous opinion of the court that the judgment should be affirmed. ” Which seems to be at variance with the above report. There is probablj', however, some mistake or omission in the memorandum. My own rough note taken in court is mislaid ; but the opinions of Judge Roane and Judge Fleming were delivered .to me by themselves for publication. Perhaps Judge Tucker, understanding that there was a concurrence of opinion in conference, neglected to carry his written opinion to court; and therefore, in fact, did not deliver it; which he meant to say, as here explained, in the memorandum, but inadvertently omitted it.